UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DARLENE ANN WINTERS,**

    **Plaintiff,**

v.                                              Case No:  8:13-cv-290-T-DNF

**CAROLYN W. COLVIN,
ACTINGCOMMISSIONER OF
SOCIAL SECURITY[1],**

    **Defendant.**

## OPINION AND ORDER

    This cause is before the Court on Plaintiff, Darlene Ann Winters' Complaint (Doc. 1) filed on January 31, 2013.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance Benefits and Supplemental Security Income disability benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. Fed. R. Civ. P. 25(d).  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

### I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review

#### A.  Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5  (1987).

#### B.  Procedural History

On February 11, 2009, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income benefits asserting a disability onset date of September 25, 2004. (Tr. 122-132).  On July 23, 2009, the Commissioner denied the applications. (Tr. 86).  A hearing was held before Administrative Law Judge B.T. Amos (the "ALJ") on February 15, 2011, and the ALJ issued an unfavorable decision on March 7, 2011. (Tr. 24-33). On December 3, 2012, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Plaintiff filed the instant action in federal court on January 31, 2013.

#### C.  Summary of the ALJ's Decision

The ALJ found that Plaintiff met the Social Security Act's insured status requirements through December 31, 2005. (Tr. 26).  At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 25, 2004. (Tr.

26). At step two, the ALJ found that the Plaintiff suffered from the severe impairments of "disorders of the cervical, thoracic, and lumbar spine including disc protrusion; shoulder pain related to tendinopathy, thickening of the coracoacromial ligament and bursitis; and headaches (20 CFR 404.1520(c) and 416.920(c))." (Tr. 26). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." (Tr. 28). The ALJ found that Plaintiff had no limitations in activities of daily living, mild limitations in social functioning, and mild limitations in concentration, persistence or pace. (Tr. 27). The ALJ found no episodes of decompensation of an extended duration. (Tr. 27). At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (Tr. 28). At step five, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 32). The ALJ found that Plaintiff was a younger individual on the alleged onset date, had at least a high school education, can communicate in English, the transferability of job skill was not material, and that "there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." (Tr. 32).

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Review of Facts and Conclusions of Law

### A. Background Facts

Plaintiff was born on November 27, 1964, and was 46 years old on the date of the initial hearing. (Tr. 32, 69). She has a high school education. (Tr. 69). She has a daycare certificate in childcare. (Tr. 70). Plaintiff lives with her husband and her 14-year-old daughter. (Tr. 70). Prior to her injury, she had her own housecleaning business. (Tr. 70-71). On September 24, 2004, she was trampled by several horses, suffering injuries to her back, shoulder, fingers, head, and face, after which time she discontinued work in her housecleaning business. (Tr. 71). Plaintiff complains of significant back pain, for which she has been unsuccessfully treated with medication, a TENS[2] Unit, acupuncture, light therapy, physical therapy, epidurals, trigger point injections, and epidural

---

2 Transcutaneous Electrical Nerve Stimulation

spinal block injections. (Tr. 72-73). Plaintiff also complains of headaches which occur one to three times a week, some of them migraines. (Tr. 74-75). Plaintiff asserts that she is unable to lift 5 pounds, that she is able to sit in a recliner for only 30 minutes at a time, and that she can only stand for 10 minutes at a time. (Tr. 76). Plaintiff testified she can walk the length of a football field. (Tr. 77). Plaintiff stated that she is able to drive herself to doctor's appointments, but that her husband usually drives her. (Tr. 78). Plaintiff testified that she is almost always unable to sleep through the night, frequently awaking due to panic attacks or pain. (Tr. 78-79). Plaintiff regularly naps during the day to make up for lost sleep. (Tr. 79).

Plaintiff completed a Function Report – Adult on October 28, 2009. (Tr. 193). Plaintiff stated that she helps her daughter wake up and make it to the bus on time, and makes sure she does her homework and household chores. (Tr. 194). Plaintiff indicated that she provides very limited assistance with pets, primarily checking their food and water dishes and making notes for her daughter and husband to refill the dishes when needed. (Tr. 194). Plaintiff states that she has difficulty with certain aspects of dressing herself, such as pulling clothing over her head, and that she has difficulty caring for her hair. (Tr. 194). She can feed herself but has difficulty cutting meats and often requires help. (Tr. 194). She is able to prepare her own meals, usually with the microwave, but often standing to prepare meals causes her significant pain. (Tr. 195). She does light cleaning that doesn't involve bending, and laundry when she feels up to it. (Tr. 195). She can drive a car, and shops for food, household items, and personal needs. (Tr. 196). She watches television, pets animals, and spends time with her daughter. (Tr. 197). She has trouble reading, as the posture hurts her head, neck, back, and eyes. (Tr. 197). She is able to walk, but not for long on hard surfaces, and sometimes her medications affect her ability to walk and carry things. (Tr. 198).

### B. Vocational Expert

A Vocational Expert, W.R. Harvey, testified at the hearing before the ALJ on February 15, 2011. (Tr. 66-80). Plaintiff's counsel presented the following hypothetical to Mr. Harvey:

> **ATTY:** If we presume an individual the same age as the claimant with the same education and presume that she can, as she testified, only alternate between sitting and standing for about two to three hours before she has to recline for a while and also that she has migraine headaches that occur on at least once a week and last for several hours that induce vomiting and require her to be isolated and pretty much – I'm not going to say incoherent, but significant loss of concentration – would she be able to do any of her previous work?
>
> **VE:** No, sir.
>
> **ATTY**: Would she be able to do any other job?
>
> **VE**: No, sir.

(Tr. 80). The ALJ did not ask the VE any questions.

### C. State Agency Evaluations

On July 22, 2009, Judith E. Meyers, Psy.D., completed a Psychiatric Review Technique. (Tr. 435-448). Dr. Meyers determined Plaintiff had medical impairment(s) that were not severe, had coexisting nonmental impairment(s) that requires referral to another medical specialty, and had anxiety-related disorders. (Tr. 435). Dr. Meyers found Plaintiff to have a medically determinable impairment of general anxiety. (Tr. 440). Dr. Meyers determined that Plaintiff had no functional limitations for restrictions of activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation of an extended duration. (Tr. 445). Dr. Meyers found that Plaintiff's functional statements were reasonable and credible. (Tr. 447). Dr. Meyers found Plaintiff to be experiencing a mild decrease in mental functioning, but that her functional limits were largely physical in nature. (Tr. 447).

On July 22, 2009, Andrea Ave[3] completed a Physical Residual Functional Capacity Assessment. (Tr. 450-457). Ms. Ave determined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, could stand and/or walk for about 6 hours in an 8-hour workday, could sit for about 6 hours in an 8-hour workday, and was unlimited in the push and/or pull operation for hand and/or foot controls. (Tr. 451). Ms. Ave noted that Plaintiff's allegations of back and shoulder pain were supported by MRIs of her shoulder and back, which showed moderate tendinopathy and minimal degenerative changes. (Tr. 451). Ms. Ave found no postural limitations, visual limitations, communicative limitations, and environmental limitations, limited manipulative limitations in the areas of handling and fingering, and unlimited manipulative limitations in the areas of reaching and feeling. (Tr. 452-454). Ms. Ave found that Plaintiff's alleged symptoms are partially credible, but their severity and alleged effect on function is not entirely consistent with the evidence, and so Ms. Ave reduced Plaintiff's RFC accordingly. (Tr. 455). Therefore, Ms. Ave determines, Plaintiff's maximum sustainable capacity would not reasonably be expected to exceed the RFC assessment as written. (Tr. 457).

On November 10, 2009, James Mendelson, Ph.D. completed a Psychiatric Review Technique for Plaintiff. (Tr. 458-471). Dr. Mendelson found Plaintiff to have medical impairment(s) that were not severe, co-existing non-mental impairment(s) that required a referral to another medical specialist, and anxiety-related disorders. (Tr. 458). Dr. Mendelson found that Plaintiff had a medically determinable impairment of "GAD by Self Report and Hx; likely in Good Meds Remission." (Tr. 463). Dr. Mendelson determined that Plaintiff had no functional limitations for restrictions of activities of daily living, mild difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation

---

3 Ms. Ave's credentials were not provided.

of an extended duration. (Tr. 468). Dr. Mendelson found no indication of a disabling mental impairment. (Tr. 470).

On December 30, 2009, William Cherry, M.D. completed a Physical Residual Functional Capacity Assessment. (Tr. 480-487). Dr. Cherry determined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and was unlimited in the push and/or pull operation for hand and/or foot controls. (Tr. 481). Dr. Cherry found Plaintiff to have the following frequent postural limitations: climbing a ramp or stairs, balancing, stooping, kneeling, crouching, crawling. (Tr. 482). Dr. Cherry found Plaintiff to have occasional postural limitations in climbing a ladder, rope, or scaffolds. (Tr. 482). Dr. Cherry found Plaintiff to have limited manipulative limitations in reaching, and unlimited manipulative limitations in the areas of handling, fingering, and feeling. (Tr. 483). Dr. Cherry found no visual limitations, communicative limitations, or environmental limitations. (Tr. 484). Dr. Cherry found Plaintiff's symptoms to be partially credible and attributable to a medically determinable impairment, and that Plaintiff "should be able to function within the limitations of this RFC." (Tr. 485).

### D. Specific Issues

Plaintiff raises four issues on appeal: (1) whether the ALJ properly evaluated the evidence from Dr. Kochno; (2) whether the ALJ committed reversible error by failing to evaluate, or even address, Plaintiff's obesity and fibromyalgia; (3) whether the ALJ committed reversible error in evaluating Plaintiff's subjective complaints; and (4) whether the ALJ erred by applying the grids rather than relying on testimony from a vocational expert.

**1. Whether the ALJ properly evaluated the evidence from Dr. Kochno**

Plaintiff argues that the ALJ erred in evaluating the findings of Dr. Taras Kochno because the ALJ focused solely on Dr. Kochno's 20% whole person impairment rating of Plaintiff. (Doc. 16 p. 10). According to Plaintiff, the ALJ ignored a great deal of evidence from Dr. Kochno that is far more relevant to the assessment of Plaintiff's RFC. (Doc. 16 p. 11). Plaintiff contends that the ALJ unjustifiably presumed, without explanation, that a 20% impairment rating is inconsistent with allegations of disabling impairments. (Doc. 16 p. 11). The Commissioner argues that there is no need for the ALJ to specifically refer to every piece of evidence, and that the ALJ's findings were consistent with the totality of Dr. Kochno's report. (Doc. 18 p. 5).

An ALJ must carefully weigh all relevant evidence, and "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). The ALJ, however, does not need to "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is 'not enough to enable [the reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

The record indicates that Plaintiff visited Dr. Kochno on February 1, 2005, for an evaluation of her maximum medical improvement following her injuries sustained from being struck and kicked by a horse on September 25, 2004. (Tr. 592). Dr. Kochno noted that Plaintiff had normal reflexes, motor function, and gait. (Tr. 595). He also noted that Plaintiff could heel and toe walk. (Tr. 595). Dr. Kochno found that Plaintiff had limited ranges of motion in her cervical, thoracic, and lumbar spines and assessed Plaintiff with a 7% impairment rating in her cervical spine, an 8% impairment rating in her thoracic spine, and a 5% impairment in her lumbar

spine. (Tr. 593). Dr. Kochno's assessed (1) cervical, shoulder, thoracic and lumbosacral musculoskeletal joint injuries; (2) left maxillary fracture with apparent hemorrhage into the left eye with residual swelling of the maxillary sinuses; (3) sleep difficulty; (4) headaches as a source of referred pain; (5) left index finger injury with pain radiating into the mid radius; (6) reliance on multiple medications; (7) poor response to physical therapy; (8) inability to work as a housekeeper cleaning houses; and (9) reduced functional tolerances and endurances with every day activities due to limited functional tolerances. (Tr. 592). Dr. Kochno assigned Plaintiff with a 20% whole person impairment rating. (Tr. 593).

In his opinion, the ALJ addressed Dr. Kochno's report and noted that her assessment was that Plaintiff "had just a 20% whole person impairment rating." (Tr. 30). The ALJ explained that "[t]his impairment rating is much lower than one would expect after listening to [Plaintiff's] testimony," and that "some of the medical evidence discussed above indicates that [Plaintiff] has experienced some medical improvement since this assessment." (Tr. 30). The ALJ concluded that Dr. Kochno's assessment was inconsistent with Plaintiff's allegations regarding the intensity and limiting effects of her severe impairments. (Tr. 30).

Upon review, the Court finds that the ALJ did not err in his evaluation of Dr. Kochno's report. While Plaintiff is correct in noting that the focus of the ALJ's treatment of Dr. Kochno's report was on the 20% whole person impairment rating, the ALJ's focus cannot be characterized as a "broad rejection" of Dr. Kochno's findings. The ALJ's opinion was, as the Commissioner argues, consistent with all of Dr. Kochno's findings, which is evidenced by a comparison of the two. The ALJ found that Plaintiff's spinal disorders, tendinopathy, ligament problems, bursitis, and headaches were severe impairments (Tr. 26), which is wholly consistent with Dr. Kochno's report (Tr. 592). The ALJ also found that Plaintiff could not perform her past work as a

housekeeper (Tr. 32), which is consistent with Dr. Kochno's report. (Tr. 592). Thus, even though the ALJ did not specifically address all aspects of Dr. Kochno's report, the totality of the report is implicitly acknowledged in the ALJ's opinion.

Therefore, because the ALJ's opinion does specifically address Dr. Kochno's report, because the ALJ's opinion does not broadly reject the report, and because the ALJ's opinion is consistent with the totality of Dr. Kochno's report, the ALJ properly evaluated the evidence from Dr. Kochno.

### 2. Whether the ALJ erred in not addressing Plaintiff's alleged obesity and fibromyalgia

Plaintiff contends that the ALJ erred by failing to consider whether Plaintiff's obesity constituted a severe impairment and by failing to even mention it in his assessment of Plaintiff's RFC. (Doc. 16 p. 14). Additionally, Plaintiff argues that ALJ erred by failing to address Plaintiff's fibromyalgia. (Doc. 16 p. 19). The Commissioner responds that the ALJ did not need to address these issues because Plaintiff did not claim obesity or fibromyalgia as a basis for her disability at the time of her application for benefits or at her hearing, and because Plaintiff failed to provide evidence that these alleged conditions caused any functional limitations that were not already found by the ALJ. (Doc. 18 p. 8-10).

As stated above, an ALJ must carefully weigh all relevant evidence, and "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). When a claimant alleges obesity, the ALJ must consider the claimant's obesity, "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment[, and] … [t]he combined effects of obesity with other impairments." Social Security Ruling ("SSR") 02-1p. Regarding fibromyalgia, because it is a condition which "often lacks

medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms," the lack of objective medical evidence is not a sufficient reason for an ALJ to fail to consider allegations of fibromyalgia. *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010). However, while an ALJ is generally required to consider all evidence that comes before it, "a claimant's failure to list an impairment, either in her application for disability benefits or through her testimony, disposes of the claim, because the ALJ was under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010).

In this case, regarding Plaintiff's claim of obesity, Plaintiff's medical records evidence that her weight fluctuated between 217 to 256 pounds, most of the time exceeding 230 pounds. (Tr. 259, 260-63, 295, 419, 473, 488, 493, 504, 516, 526, 562, 570, 578). Plaintiff's body mass index was calculated at 39.14 when her weight was 249 pounds. (Tr. 505). A body mass index of 30.0 or above constitutes "obesity" and a body mass index greater than or equal to 40.0 constitutes "extreme obesity" according to the *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults*. SSR 02-1p. Given the medical evidence of Plaintiff's weight and body mass index, Plaintiff's obesity was a factor appropriate for consideration. *Ingram v. Astrue*, 2008 WL 2943287, at *6 (M.D. Fla. July 30, 2008).

Although the ALJ failed to address Plaintiff's obesity, the Court finds that the ALJ did not commit reversible error. The Court notes that a diagnosis of obesity does not equate with a finding of severity. *Id.* (citing *Wind v. Barnhart,* 133 F. App'x 684, 690-91 (11th Cir. 2005)). Here, Plaintiff has failed to demonstrate any medical record that her obesity precludes her from performing work at the sedentary level as found by the ALJ. Importantly, Plaintiff did not claim obesity as a basis for disability in her application for benefits or at her hearing, nor did she allege

any resulting functional limitations. (Tr. 122-32, 66-81). Plaintiff was represented by counsel throughout the application process and her counsel had the opportunity to question her during the hearing. Thus, this is not a case where the claimant was unrepresented, subjecting the ALJ to a heightened duty to probe into all of the relevant facts. *Street v. Barnhart,* 133 F. App'x 621, 627 (11th Cir. 2005) (citing *Brown v. Shalala,* 44 F.3d 931, 934-35 (11th Cir. 1995)).

The same is true of Plaintiff's alleged fibromyalgia. Although there is medical evidence in the record from several examining physicians which indicates Plaintiff has been diagnosed with fibromyalgia, (Tr. 534, 558, 542, 537-538), Plaintiff did not claim fibromyalgia as a basis for disability in her application or hearing. (Tr. 122-32, 66-81). The ALJ was therefore not obligated under persuasive Eleventh Circuit law to address this alleged condition. *Robinson*, 365 F. App'x at 995. Plaintiff never claimed fibromyalgia as a basis for disability, even when questioned by her own attorney at her hearing. (Tr. 66-81). The ALJ limited Plaintiff's RFC to "the full range of sedentary work," (Tr. 28), and Plaintiff failed to provide any evidence that her alleged fibromyalgia has had any effect on her capacity to perform sedentary work.

Because Plaintiff failed to claim obesity or fibromyalgia as a basis for disability in her application for benefits or at her hearing, and failed to allege any functional limitations as a result of these conditions, the ALJ did not err by not directly addressing these issues in his opinion.

### 3. Whether substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints

Plaintiff argues that the reasoning behind the ALJ's credibility determination was inadequate and that the ALJ ignored significant evidence favorable to the Plaintiff's credibility. (Doc. 16 p. 15-24). In particular, Plaintiff argues that the ALJ's finding that Plaintiff's statements regarding her daily activities are inconsistent with her allegations is erroneous. (Doc. 16 p. 19). Also, Plaintiff argues that the ALJ's focus on objective testing such as radiographic evidence was

inappropriate and cannot be sustained. (Doc. 16 p. 22). The Commissioner responds that the ALJ's credibility determination was supported by substantial evidence, and that Plaintiff's subjective complaints were inconsistent with objective medical evidence.

The agency's regulations provide that statements about pain and other symptoms must be supported by medical signs or laboratory findings in order to be considered credible. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). The Eleventh Circuit has articulated a test for determining disability on the basis of testimony of pain or other symptoms. In order for such testimony to be considered credible, the Plaintiff must provide evidence of "an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." Holt v. Sullivan, 921 F.2d 1210, 1215 (11th Cir. 1991). If an ALJ "refuses to credit such testimony, he must articulate explicit and adequate reasons" for doing so. *Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir. 1987). Such explicit and adequate reasons must be supported by substantial evidence. *Id.* at 1012. The Eleventh Circuit has held that "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1561(11th Cir. 1995).

Here, the ALJ articulated specific reasons for his credibility finding, and cited substantial evidence in the record. In his opinion, the ALJ compared statements made by the Plaintiff during a psychological consultative evaluation on June 29, 2009 regarding her daily activities with Plaintiff's allegations regarding the intensity and limiting effects of her conditions, and found them to be inconsistent. (Tr. 29). The ALJ noted that during this examination, Plaintiff stated that at home she does the dishes, fixes simple meals, does her own laundry, goes grocery shopping, and

cares for her pets. (Tr. 29). The ALJ explained that he would expect that someone capable of performing these activities could at least meet the physical demands of sedentary work. (Tr. 29).

Additionally, the ALJ found that the radiographic evidence did not support Plaintiff's allegations of facial, neck, back, or shoulder pain, or headaches. (Tr. 29). *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (noting the Commissioner will evaluate a claimant's statements in relation to the objective medical evidence and other evidence in reaching a conclusion as to whether she is disabled). The ALJ noted that Dr. Brian Hoban found no evidence of fractures after reviewing Plaintiff's x-rays on November 1, 2004. (Tr. 29, 288). The ALJ noted that the MRI of Plaintiff's thoracic spine performed on November 9, 2004, and interpreted by Dr. Charles Domson revealed only a dehydrated bulging disc "with small central disc protrusion at T10-11" with no canal stenosis and no compression fractures. (Tr. 29, 276). The ALJ noted that on the same date, Dr. Domson performed an MRI of Plaintiff's cervical spine which revealed "degenerative discs with mild bulges from C3 through C6," a "moderate broad based posterior disc protrusion ... with mild canal stenosis," "moderate disc bulge ... with mild canal stenosis" at C4-5, and a "small left central disc protrusion at C5-6 with mild lateral recess narrowing and foraminal narrowing on the left". (Tr. 29-30, 273).

The ALJ noted that Dr. Anthony Rizzo described the results of a CT scan of Plaintiff's brain taken on April 21, 2006, due to her complaint of headaches, as "unremarkable". (Tr. 30, 269). The ALJ noted that an MRI of Plaintiff's right shoulder taken on December 5, 2006, revealed "moderate tendinopathy of the distal anterior aspect of the supraspinatus," bursitis, and thickening of the coracoacromial ligament. (Tr. 30, 268). The ALJ opined that "[o]verall, the radiographic evidence from within the three years after the accident does not support the claimant's allegations regarding the intensity and limiting effects of her physical severe

impairments. This inconsistency between her allegations and the medical evidence undermines the credibility of her allegations". (Tr. 30).

The ALJ also addressed radiographic evidence from more than three years after the accident, which he found to be "even more inconsistent with [Plaintiff's] allegations regarding the intensity and limiting effects of her physical severe impairments." (Tr. 30). T he ALJ noted in particular an MRI study of Plaintiff's lumbar, thoracic, and cervical regions taken on May 11, 2009 .(Tr. 30, 422-26). The lumbar MRI revealed only a "diffuse protrusion of the L5-S1 disc without significant canal or foraminal stenosis," and that the rest of Plaintiff's lumbar spine had a normal appearance (Tr. 30, 426). The cervical MRI revealed "mild foraminal encroachment" at C4-5 and C5-6 caused by "disc/osteophyte protrusion" and the thoracic MRI revealed only "minimal degenerative changes" with "no significant canal or foraminal stenosis." (Tr. 30, 423, 424). The ALJ noted, "Overall, this evidence is highly inconsistent with the claimant's allegations regarding the intensity and limiting effects of the abnormalities in the lumbar, thoracic, and cervical regions of her spine. This inconsistency undermines the credibility of the claimant's allegations". (Tr. 30).

Furthermore, in determining that Plaintiff's subjective complaints were not entirely credible, the ALJ considered inconsistencies between other medical findings and Plaintiff's testimony. For example, the ALJ noted that the findings of Dr. Robert Shefsky were "[c]onsistent with the radiographic evidence, but notably inconsistent with [Plaintiff's] allegations. (Tr. 30, 472-78). The ALJ noted that

> [o]n December 24, 2009, Dr. Shefsky observed [Plaintiff] walking with a normal gait and standing with a normal stance. He also observed that [Plaintiff] did not need any help getting on and off the exam table or getting out of a chair. In an examination of her extremities and hands, Dr. Shefsky found that [Plaintiff] possessed normal strength in all of her extremities and normal grip strength with her hand and finger dexterity intact. A thorough range-of-motion study revealed that the [Plaintiff's] range-of-motion in the rest

>lumbar spine and shoulders is slightly reduced. However, she possessed a normal range-of-motion in the rest of her joints and the rest of her spine.

(Tr. 30, 473-474). The ALJ found Dr. Shefsky's findings and observations inconsistent with Plaintiff's testimony regarding the intensity and limiting effects of her physical severe impairments. (Tr. 30). The ALJ concluded that this inconsistency undermines the credibility of Plaintiff's allegations. (Tr. 30).

Here, upon review of the ALJ's analysis in evaluating Plaintiff's subjective complaints, the Court finds that the ALJ adequately articulated his reasoning for finding Plaintiff not entirely credible. Contrary to Plaintiff's arguments, the ALJ did not err in relying on Plaintiff's report of her daily activities in evaluating her subjective complaints. *See Marcia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (an ALJ may properly consider a claimant's daily activities in its credibility determination). Nor does the Court find that the ALJ erred by failing to question Plaintiff at the hearing about her daily activities. As noted above, Plaintiff was represented by counsel during the hearing and had every opportunity to delve into Plaintiff's daily activities. "The question is not . . . whether the ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.,* 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ clearly articulated his reasoning and cited substantial evidence in support of his credibility determination. For this reason, it must be upheld.

### 4. Whether the ALJ properly applied the Medical-Vocational Guidelines

Plaintiff argues that the ALJ's RFC finding specifying an unrestricted range of sedentary work cannot be deemed supported by substantial evidence and, thus, it was reversible error for the ALJ to conclude that Plaintiff is not disabled through a direct application of the Medical Vocational Guideline ("Grids") Rule 201.27. (Doc. 16 p. 25). The Commissioner asserts that Plaintiff failed

to demonstrate that she was more limited than found by the ALJ, and so the ALJ properly relied on the Grids. (Doc. 18 p. 18-20).

If a claimant is capable of performing the full range of work at a certain exertional level, an ALJ is permitted to rely on the Grids, and is under no obligation to elicit testimony from a vocational expert. *See Phillips*, 357 F.3d at 1242-43. The Commissioner can establish that a Plaintiff is capable of performing certain types of jobs in the national economy if a Plaintiff's vocational characteristics align with the factors of a rule in the Grids. *See* 20 C.F.R. 404.1569, 404.1569a, 416.696, 416.696a; *Heckler v. Campbell*, 461 U.S. 458, 461-62, 470 (1983).

In the present case, the ALJ matched Plaintiff's age, education, work experience, and RFC for sedentary work with Grid Rule 201.27, finding Plaintiff to be not disabled. (Tr. 33). Plaintiff did not demonstrate that she was any more limited that found by the ALJ or that she was incapable of performing the full range of sedentary work.  Therefore, because the ALJ's application of the Grids was based on substantial evidence, and because Plaintiff failed to demonstrate that she was incapable of doing work at the sedentary level of exertion, the ALJ's reliance on the grids was consistent with the law and must be upheld.

### III. Conclusion

For the reasons states above, it is hereby **ORDERED:**

1. The final decision of the Commissioner is **AFFIRMED** pursuant to 42 U.S.C. § 405(g); § 205(g) of the Social Security Act.

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 5, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties